IN THE CIRCUIT COURT OF JACKSON COUNTY
STATE OF MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| REBECCA WIGINGTON,<br>Natural mother of CARLOS CRUZ,<br><br>    Plaintiff,<br><br>v.<br><br>OFFICER DUSTIN RAPP,<br><br>OFFICER DARRELL SCHMIDLI,<br>    Serve: Independence Police Dept.<br>          223 N. Memorial Dr.<br>          Independence, MO 64050<br><br>And<br><br>CITY OF INDEPENDENCE,<br>MISSOURI,<br>    Serve: City Hall<br>          111 E. Maple<br>          Independence, MO 64050<br><br>    Defendants. | Cause No.: 1816-CV27234<br><br>Div. No.: 16<br><br>WRONGFUL DEATH<br>JURY TRIAL DEMANDED |

## AMENDED PETITION FOR DAMAGES

COME NOW Plaintiffs Carlos Cruz by and through his natural mother Rebecca Wigington. Plaintiffs, by and through undersigned counsel of record, state the following as their amended cause of action against Defendants City of Independence, Missouri, Officer Dustin Rapp, and Officer Darrell Schmidli.

### JURISDICTION AND VENUE

1. Defendants caused the death of Carlos Cruz, and Plaintiffs bring this action pursuant to the law of the State of Missouri for wrongful death and related claims, § 537.010 et seq., RSMo.

2. Venue is proper in this judicial circuit because all acts or omissions complained of occurred in Jackson County, Missouri and all parties reside in Jackson County, Missouri. Venue is also

EXHIBIT A

proper under § 508.010, RSMo., and the Constitution of the State of Missouri.

## PARTIES

3. Carlos Cruz was a resident of Independence, Missouri until his death on January 7, 2017.

4. Rebecca Wigington is a resident of Independence, Missouri.

5. The City of Independence, Missouri, is a municipality of the State of Missouri, located in Jackson County.

6. Officer Dustin Rapp is a Missouri resident and is a police officer with the Police Department of the City of Independence, Missouri.

7. Officer Darrell Schmidli is a police officer the Police Department of the City of Independence, Missouri.

## FACTS COMMON TO ALL COUNTS

8. On January 7, 2017, Rebecca Wigington needed help. As a concerned mother, it broke her heart hearing her son, Carlos Cruz, threaten suicide. She had tried what she could, but Cruz had been drinking and was overwhelmed by sadness. Reaching out for help was her only choice. So Rebecca called 911.

9. When Rebecca reached out for help, she expected help to arrive. She trusted that the 911 operator would send professionals with training in moments of crisis. But what came was even more heartbreak.

10. At about 7:00 P.M. that night, police officers from the Independence Police Department arrived at 18926 East 37th Terrace. Instead of addressing the situation as a mental health crisis, the officers treated Cruz as a criminal. Upon arriving, the officers surrounded Cruz's apartment building, drew their guns, pointed their guns at Cruz, and instructed all family members inside the apartment to exit.

11. Cruz walked outside and onto the apartment's patio. As he walked onto the patio, Cruz

held a bottle of alcohol and placed the shotgun he was threatening to kill himself with on the porch railing.

12. Shortly after Cruz walked out onto the patio, one police officer, Dustin Rapp, told his tactical commander that he "has a shot." The commander, Sergeant Schmidli, told Rapp not to shoot, and informed the group that the goal should be to avoid agitating Cruz.

13. So another officer, Amanda Huffman, began to negotiate with Cruz. During their exchange, Cruz never made threats to the officers. According to the police department audio tapes of the incident, he remained calm. He didn't beg for the officers to shoot him. He didn't threaten to force them to shoot him. He wasn't crying. He assured the officers that he was fine and that he was only concerned about his dogs getting water. He complied with the officer's directions to repeat what the negotiator was telling him to repeat.

14. In fact, Cruz showed no signs of taking some type of action. Adequately trained negotiators recognize certain behavioral signs that a suicidal individual is about to take some type of action. These include changes in breathing, uncontrollable shaking, environmental scanning, incoherent speech, and sudden movements. But Cruz exhibited none of these symptoms. His voice and mood were not escalated; his voice was slurred from alcohol but not incoherent. According to the video of the incident, he took no sudden movements, and was not uncontrollably shaking or breathing heavily.

15. In response to Huffman asking Cruz to repeat himself, Cruz calmly began his sentence. But, while Cruz was in the middle of a sentence, Officer Dustin Rapp fired an AR-15 into Cruz's chest, killing him.

16. In essence, the Independence Police Department decided to prevent Cruz from killing

himself by killing him. At the time he was killed, Cruz had not committed a crime, he was not suspected of committing a crime, and he had not threatened anyone or police officers. There was simply no justification for shooting and killing Carlos Cruz.

17. What followed Cruz's unnecessary death was a botched attempt to cover up the mistakes made by Rapp and his colleagues. For example:

    a. The police investigation stated that Rapp fired from a 45-degree angle southeast of Cruz's location on the patio, which would have resulted in a right-to-left trajectory, but the bullet moved in a left-to-right trajectory. Indeed, it would have been impossible for Rapp's empty casing to have been located by the steps had he fired from the location indicated on the investigator's diagram.

    b. Because the bullet had no up or down deviation as it passed through Cruz's body, given that Cruz was in a higher position than the officers, he must have been bent forward at the waist.

    c. The video and audio recordings show that before the shooting, officers said the shotgun was lying on the patio railing. Then, after Cruz was shot, the first officer to arrive at Cruz's location appears to reach toward the railing. But Officer Huffman offered two inconsistent accounts of whether and how Cruz had touched the shotgun before he was shot. Another officer, Officer Robert Romey, reported that Cruz never picked his shotgun up off the porch's railing. A third officer, Richard Romero, filed a report that Cruz simply moved the shotgun while it remained on the railing, but—after having time to compare his account with other officers—he reported in an interview that Cruz picked up the shotgun.

    d. Officer Richard Romero reported that Cruz said, "Just kill me" "several times,"

but the audio and video recordings prove he did not.

18. Although the officers' reports and statements are inconsistent on key points, they are consistent on other issues:

   a. The officers agree that they knew that Cruz was suicidal when they arrived on the scene.

   b. The officers agree that Cruz did not purposely pick up the shotgun, put his finger on the trigger, and take aim at officers.

   c. The officers, with the exception of Cruz's shooter and Officer Romero (in his second version of his story), agree that the shotgun never left the porch railing.

   d. The officers agree that Cruz did not threaten the officers or anyone else.

19. In fact, in the hours between the officers filing their reports and when they were interviewed by investigators, their version of events became much more consistent with Rapp's story, showing that the officers and their lawyer coordinated the stories in an attempt to justify Cruz's killing.

20. In addition to their inconsistent statements, the officers involved in Cruz's death acted improperly in several important ways:

   a. The person in charge of the police response, Schmidli, took himself out of active command by moving to the back of the building and away from Cruz. This tactical mistake resulted in Schmidli not having his eyes on the incident at hand, leaving him unable to communicate with the other officers other than through the radio.

   b. In addition, the officers had no plan at all to properly stage, and no one to direct them. When facing a shotgun, the worst possible tactic is to group the officers in a

bunch together behind the same car and risk multiple officers getting shot with a single blast of buckshot. Instead, officers should have been fanned out and Cruz should have been well-lit, both of which would have increased officer safety, ensured a clear sight of Cruz's movements, and ensured that officers were able to more easily reposition themselves to execute the plan.

c. There was no plan in place in the event the negotiations failed, and the incident commander was not in a position to direct any such plan. Alternative plans in this type of situation should include use of less than lethal force, such as bean bags, 40mm projectiles, Taser, or OC Pepper spray. Initially, Schmidli was in the perfect position to deploy a Taser but inexplicably abandoned his position.

d. Officer Rapp, Cruz's shooter, acted throughout the incident as a police sharpshooter. But, because his tactical commander was not on the scene, he acted independently when he decided to kill Cruz.

e. The appropriate way to respond to a crisis is to de-escalate the individual involved. But the officers instead escalated the situation, focusing a large group of police officers pointing their guns directly at Cruz. With their sharpshooter ready to fire, there was no need for the other officers to have their handguns in their hands, especially if seen by Cruz. The video also shows that Rapp lit up Cruz with the tactical light on his rifle, an entirely unnecessary inflammatory tactic.

f. Another elementary rule of crisis negotiation is that only a single designated individual attempt to communicate with the individual. But on multiple occasions, several officers yelled commands at Cruz.

21. In sum, three things caused the death of Carlos Cruz. First, Schmidli failed to take a

forward position to maintain command of the incident, eliminating effective command and control of the situation. Second, the remaining officers failed to carry out a proper Crisis Intervention Team ("CIT") response. Third, Rapp inappropriately used lethal force to kill Cruz.

## COUNT I

### *Wrongful death pursuant to § 537.080, RSMo., Excessive Use of Force*

22. Plaintiffs incorporate by reference each of the foregoing paragraphs of this Petition as if full restated herein.

23. Rapp's actions and omissions described herein were committed without just cause or provocation.

24. Rapp's use of deadly force was excessive, was not necessary, and was not justified.

25. Rapp used more force than was reasonably necessary.

26. Rapp had a duty to exhaust all other reasonable means of detaining Cruz prior to using deadly force.

27. Schmidli had a duty to ensure that Rapp, who was under his command, exhausted all other reasonable means of detaining Cruz prior to resorting to the use of deadly force.

28. The City of Independence, Missouri, had a duty to ensure that citizens were not subjected to unreasonable risk of harm by ensuring that its officers exhaust all other reasonable means prior to resorting to the use of deadly force at the hands of City employees acting within the course and scope of their employment.

29. As a direct and proximate result of the actions and omissions of Rapp, Schmidli, and the City of Independence, Plaintiffs have suffered damages including the loss of companionship; loss of the benefit of the love, comfort, guidance, counsel and support;

mental anguish; death and funeral expenses; and emotional pain, torment, and suffering experience.

30. The conduct of Rapp, Schmidli, and the City stated herein was outrageous because of their evil motive(s) and/or reckless indifference to the rights and well-being of the Carlos Cruz and subjected Cruz to an unreasonable risk of harm. The conduct, acts and omissions of all Defendants demonstrate aggravating circumstances, attending the death of Carlos Cruz, justifying an award of punitive damages to deter similar future wrongdoing.

31. The actions of Rapp stated herein arose from the performance of his duties as an officer and employee of the City of Independence.

32. It naturally arose from Schmidli's employment with the City of Independence to train, supervise, educate and discipline Rapp.

33. As a direct and proximate result of the failure of Schmidli and the City of Independence to adequately train, supervise, and discipline its officers, Plaintiffs suffered the injuries stated herein.

34. The City of Independence as the respondeat superior to defendants Rapp and Schmidli is responsible for the acts and omissions of its agents which constituted torts under the law of the State of Missouri identified herein.

## COUNT II

*Violation of 42 U.S.C. § 1983 – Wrongful Death and Excessive Use of Force (Rapp)*

35. Plaintiffs incorporate by reference each of the forgoing paragraphs of this Petition as if fully restated herein.

36. The use of deadly force by Defendant Rapp against Decedent Cruz was unreasonable

under the circumstances and thus violated Decedent's clearly established rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution to be free from deadly use of force.

37. Defendant Rapp's specific acts were objectively unreasonable.

38. Decedent Cruz did not pose a threat to harm Defendant Rapp.

39. Defendant Rapp's actions and inactions resulted in the unauthorized and unreasonable shooting and killing of Decedent.

40. As a direct and proximate result of Defendant Rapp's conduct, Plaintiffs have been injured and are entitled to recover damages for the deprivation of Decedent's constitutional rights; loss of companionship; loss of consortium; loss of the benefit of the love, comfort, guidance, counsel and support; mental anguish; and emotional pain, torment, and suffering experience by Plaintiffs as a result of the death of her son.

41. The conduct of Defendant Rapp stated herein was outrageous because of his evil motive(s) and/or reckless indifference to the rights and well-being of the Decedent and subjected Decedent to an unreasonable risk of harm. The conduct, acts, errors, and omissions of Defendant Rapp demonstrate aggravating circumstances attending the death of Decedent, justifying an award of punitive damages to deter similar future wrongdoing.

42. The actions of Defendant Rapp stated herein naturally arose from the performance of his duties as an officer and as part of his employment for The City of Independence.

43. Plaintiff is entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT III

*Violation of 42 U.S.C. § 1983 - Failure to Train and Failure to Supervise (Schmidli and The City of Independence)*

44. Plaintiffs incorporate by reference each of the foregoing paragraphs of this Petition as if fully restated herein.

45. Defendants Schmidli and The City of Independence are responsible for establishing, maintaining, enforcing, and/or training regarding office policies, procedures, patterns, practices, and/or customs of The City of Independence Police Department for effectuating the detention and arrest of individuals, including but not limited to how the officer is to present himself; how to approach; and proper use of deadly force.

46. Defendants Schmidli and The City of Independence deliberately and with reckless disregard for the constitutional rights of the citizen of Independence, Missouri, failed to establish adequate and sufficient policies and procedures for training supervisors and officers within The City of Independence Police Department to safely effectuate the detention and arrest of individuals, including but not limited to: how the officer is to present himself; how to approach; and proper use of deadly force.

47. The actions and inactions of Defendant Rapp resulted from the training, or lack thereof, he received in implementing and/or executing the policies, procedures, patterns, statements, regulations, decisions, customs, and/or practices established, maintained, enforced, and/or adopted by Defendants Schmidli and The City of Independence.

48. The respective policies, procedures, patterns, practices, and/or customs of Defendants Schmidli and The City of Independence were a moving force behind, and effectively caused Plaintiffs' death.

49. As a direct and proximate result of the conduct of Defendants Schmidli and The City of Independence, Plaintiffs have been injured and are entitled to recover damages for the deprivation of Decedent's constitutional rights; loss of companionship; loss of consortium; loss of the benefit of the love, comfort, guidance, counsel and support; mental anguish; and emotional pain, torment, and suffering experienced by Plaintiffs as a result of the death of her son.

50. Plaintiff is entitled to a recovery of reasonable attorney fees pursuant to 42 U.S.C. § 1988.

## COUNT IV

### *Respondeat Superior of Defendant The City of Independence, Missouri*

51. Plaintiffs incorporate by reference each of the foregoing paragraphs of this Petition as if fully restated herein.

52. Defendants Rapp and Schmidli were employed by The City of Independence prior to January 7, 2017 as police officers.

53. Defendant The City of Independence is liable for the negligent acts or omissions of its employees Defendants Dustin Rapp and Darrell Schmidli.

54. Defendants Dustin Rapp and Darrell Schmidli were acting within the scope and course of their employment during the occurrence of January 7, 2017.

55. Defendants Rapp and Schmidli's actions were done to further the business of the City of Independence under the city's authority and direction.

56. Defendant The City of Independence had a right or power to control and direct the physical conduct of Defendants Dustin Rapp and Darrell Schmidli in performance of the occurrence of January 7, 2017.

57. Defendant The City of Independence failed to train or properly educate Defendants Rapp and Schmidli, resulting in Plaintiff Cruz's death.

WHEREFORE, Plaintiffs pray that this Court enter judgment on any jury verdict in which a jury awards actual damages according to law; that this Court enter judgment on any jury verdict in which a jury awards punitive damages which will serve to punish the defendants for their conduct in the past and deter the defendants and others similarly situated from the same or similar conduct in the future; that this Court enter judgment on any jury verdict in which a jury awards actual damages for wrongful death pursuant to Missouri statutory law, as well as any damages. Plaintiffs hereby demand a trial by jury in this matter on all counts.

Respectfully submitted,

THE DEFEO LAW FIRM

By: */s/ Daniel T. DeFeo*
DANIEL T. DEFEO #35161
G. DOMINIC DEFEO #67481
1627 Main Street, Suite 900
Kansas City, MO 64108
(816) 581-4600 Telephone
(816) 581-4646 Facsimile
ddefeo@defeolaw.com
gdefeo@defeolaw.com

Attorneys for Plaintiff